UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS' LOCAL
324 FRINGE BENEFIT FUNDS, et al.,

    Plaintiffs,                                     Case No. 17-11681

vs.                                                  HON. MARK A. GOLDSMITH

J. C. HOLLY CONTRACTING, INC., et al.,

    Defendants.
_____/

## ORDER & OPINION
## GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT (DKT. 23)

This is an action brought by Plaintiffs Operating Engineers' Local 324 Fringe Benefit Funds and Trustees of the Operating Engineers' Local 324 Fringe Benefit Funds (the "Funds") for unpaid fringe benefit contributions against Defendants J.C. Holly Contracting, Inc. ("J.C. Holly"), Timothy Thayer, and Brian Thayer (Dkt. 6). The Funds are multiemployer fringe benefit trust funds established to provide benefits to employees under the Employee Retirement Income Security Act of 1974, as amended, 29 U. S. C. §§1001-1461 ("ERISA"). The Funds pay medical expenses, pensions, vacation pay, and other benefits for their participants and beneficiaries. Defendants Timothy Thayer and Brian Thayer are the President and Vice President, respectively, of J.C. Holly. Although J.C. Holly is a defendant in this case, it filed a petition for bankruptcy on July 26, 2018 (Dkt. 22), which stays this matter as to J.C. Holly only. The Funds move for summary judgment against Timothy and Brian Thayer, as J.C. Holly's principals, for breaching

1

their fiduciary duty to make fringe benefit contributions on behalf of J.C. Holly employees (Dkt. 23).[1] For the reasons that follow, the Court grants in part and denies in part the Funds' motion.

## I. BACKGROUND

J.C. Holly is a construction contractor that performs concrete and earth work, site balancing, and installs water, storm, and sanitary sewers. Pl. Statement of Material Facts ("PSMF") ¶ 3 (Dkt. 23). Defendants Timothy and Brian Thayer (collectively the "Thayers") are brothers who own and operate J. C. Holly. Id. ¶ 4. They are the only functioning officers and directors of J.C. Holly. Id.

On April 10, 1986, J.C. Holly entered into a collective bargaining agreement ("CBA") with the Funds in which it agreed to abide by the "Wage Rates, Fringe Benefits, and all other terms, conditions and provisions of the most current CBA Agreement between" the Funds and seven contractor associations, including the Associated General Contractors of America, Michigan, Detroit and the Upper Peninsula Chapters ("AGC"). 1986 CBA, Ex 1 to Pl. Reply (Dkt. 29-1). Neither Timothy nor Brian Thayer ever signed a CBA in their individual capacities. The Funds claim J.C. Holly is a party to two agreements: The CBA with AGC ("AGC Agreement") and the Construction Association of Michigan Agreement ("CAM Agreement"). The Thayers dispute that J.C. Holly is a party to the CAM Agreement, Def. Sur-Reply at 2 (Dkt. 34), but not that J.C. Holly is bound by the AGC Agreement.

---

[1] The Thayers also move for summary judgment in their response brief in violation of the Local Rules. Resp. at 6 (Dkt. 28). Eastern District of Michigan Local Rule 7.1 provides that "[u]nless the court permits otherwise, each motion and response to a motion must be accompanied by a single brief." Mich. LR 7.1(d)(1)(A). The Thayers' brief cannot simultaneously serve as both a single brief in support of their response and a single brief in support of an independent motion for summary judgment.

2

With the exception of the associations' names, the AGC Agreement and the CAM Agreement contain identical provisions with respect to the Funds. Compare AGC Agreement ¶¶ 29-36, Ex. 18 to Pl. Reply (Dkt. 29-5), with CAM Agreement ¶¶ 29-36, Ex. 2 to Pl. Mot. (Dkt. 23-2). Timothy R. LaLonde, a Fund Coordinator for the Funds, submitted an affidavit confirming that "[t]he agreement between Operating Engineers Local 324 and the [AGC] is substantially the same as the CAM Agreement, covering identical work and containing identical provisions with respect to the Funds." LaLonde Aff., Ex. 10 to Pl. Mot. ¶ 6. The Thayers do not dispute this point.

Timothy and Brian Thayer admit that they alone make decisions about disposition of money received by J.C. Holly, including deciding whether to pay fringe benefit contributions that J.C. Holly owes to the Funds, when to pay the contribution, and the amount of the contributions to pay. PSMF ¶ 7; Def. Statement of Material Facts ("DSMF") ¶ 7 (Dkt. 28); Brian Thayer Dep., Ex. 12 to Pl. Mot. at 35:21-24 (Dkt. 23-12); Timothy Thayer Dep., Ex. 15 to Reply at 19:8-10 (Dkt. 29-2). The Funds completed two payroll audits of J.C. Holly covering work performed from September 2008 through March 2017, and April 1, 2017 through May 12, 2017. PSMF ¶ 12. The audits found that J.C. Holly's contributions for work performed from December 2012 through May 2018 were delinquent and that it maintained a balance owing of $81,418.34, consisting of $36,166.89 in fringe benefit contributions, $29,960.70 in liquidated damages, and $15,290.75 in interest. Id. The Thayers do not dispute the amounts that J.C. Holly owes to the Funds. DSMF ¶ 12.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact

exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### III. ANALYSIS

There are three issues that must be resolved in this case. First, the Funds must show that J.C. Holly failed to meet its obligation of making fringe benefit payments to the Funds. Second, the Funds must show that Timothy and Brian Thayer were fiduciaries of the unpaid fringe benefit contributions and breached their fiduciary duties. Finally, they must justify damages against Timothy and Brian Thayer. The Court will take each in turn.

**A. J.C. Holly's Unpaid Fringe Benefits**

The Funds' claim against J.C. Holly is brought under Section 515 of ERISA, which requires employers to make contributions to employee funds in accordance with the terms and conditions of collective bargaining agreements. 29 U.S.C. § 1145. "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –"

    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of--
        (i) interest on the unpaid contributions, or

>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Contributions are plan assets as soon as they are due and owing. See, e.g., Plumbers Local 98 Defined Ben. Pension Fund v. M & P Master Plumbers of Michigan, Inc., 608 F. Supp. 2d 873, 877 (E.D. Mich. 2009).

The Thayers make much of the fact that the CAM Agreement was not part of the 1986 CBA signed by Brian Thayer. But this argument is immaterial, because J.C. Holly's obligation to make fringe benefit payments is identical under the AGC Agreement, which is expressly identified in the 1986 CBA. There is no dispute of material facts that J.C. Holly is obligated to make fringe benefit contributions to the Funds. There was some dispute as to the amount of unpaid contributions, but the matter was resolved through a subsequent review by Wayne B. Kless of Stefansky, Holloway & Nichols, who conducted two audits of J.C. Holly and confirmed the outstanding unpaid benefits with J.C. Holly's office manager, Janet Thayer. Kless Aff., Ex. 11 to Pl. Mot. ¶¶ 2-9 (Dkt. 23-11). The amount of unpaid fringe benefits as of August 1, 2018 is $36,166.89. Id. ¶ 9. The Thayers do not dispute this amount. Therefore, J.C. Holly failed to meet its obligation of making fringe benefit payments to the Funds.

**B. Timothy and Brian Thayer are ERISA Fiduciaries**

The Funds argue that Timothy and Brian Thayer, as President and Vice President respectively, are individually liable for breaching their fiduciary duties under ERISA to ensure that the J.C. Holly met its contribution obligations. The Thayers argue that they are not fiduciaries because the Funds unethically attempted to collect unpaid fringe benefit contributions outside of

the statute of limitations. Resp. at 6-7 (Dkt. 28). They further argue that rather than misappropriating funds from J.C. Holly, they loaned money to J.C. Holly to keep the company afloat. The Thayers' arguments miss the mark.

Under ERISA, "a person is a fiduciary with respect to a plan to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). "[P]ension and benefit fund contributions are plan assets as soon as they are <u>due and owing</u>." <u>Trustees of the Operating Engineers' Local 324 Pension v. Glencorp, Inc.</u>, 178 F. Supp. 3d 600, 607 (E.D. Mich. 2016) (emphasis in original) (citing cases). A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

> ERISA imposes personal liability on fiduciaries as follows:
>
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a). This district has "universally treat[ed] delinquent payments to ERISA funds as de facto mismanagement of plan assets" from which personal liability flows. <u>See, e.g.</u>, <u>Glencorp</u>, 178 F. Supp. 3d at 608 (collecting cases).

The Thayers first argue that they are not fiduciaries because the Funds supposedly acted in an unethical manner by attempting to recover unpaid fringe benefits that were outside the statute of limitations. Resp. at 6-7. The Thayers offer no authority for this argument, and the Court could not locate any such authority. To be clear, any dispute regarding what portion of the benefits is

beyond the statute of limitations has been resolved, as the Thayers concede. Id. at 7. But any prior efforts to collect on stale claims, whether well-intentioned or not, have no bearing on the Funds' right to proceed on claims that are no stale.

Next, the Thayers argue that there is no evidence showing that employee contributions were withheld and, therefore, there could be no misappropriation of plan assets. Resp. at 8. But there is no dispute that J.C. Holly is delinquent on contribution payments to the Funds. The Funds have provided two audits and associated discrepancy information charts detailing the unpaid contributions related to a J.C. Holly employee. See Ex. 4-7 to Pl. Mot. (Dkts. 23-4, 23-5, 23-6, 23-7). The Thayers make no attempt to discredit this information or explain why this documentation is somehow lacking. As noted above, this district has "universally treat[ed] delinquent payments to ERISA funds as de facto mismanagement of plan assets" from which personal liability flows. Glencorp, 178 F. Supp. 3d at 608 (collecting cases). Nonetheless, the Sixth Circuit has said that "refusal to pay the funds as required under the CBA does not rise to the level of exercising discretionary control or authority such that fiduciary status attaches." Sheet Metal Local 98 Pension Fund v. AirTab, Inc., 482 F. App'x 67, 69 (6th Cir. 2012). However, the AirTab panel also noted fiduciary status may attach where an employer "decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries." Id. at 69-70 (citing LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997)). In their response brief, the Thayers admit to paying company creditors instead of paying the delinquent fringe benefit contributions.

The Thayers argue that they did not misappropriate funds by pointing to the fact that they have made personal loans to J.C. Holly and personally guaranteed other loans to J.C. Holly, which were used to pay other creditors, including paying legal fees, insurance, and operating expenses.

7

Resp. at 7. But this is irrelevant to whether they breached their fiduciary duty. The fringe benefit contributions became plan assets when they were due and owing. The Thayers had possession of the plan assets and were responsible for transmitting the contributions to the Funds, which made them ERISA fiduciaries. 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."). However, rather than make the fringe benefit contributions to the Funds, the Thayers chose to pay other creditors. And when J.C. Holly took out loans to cover its expenses, the Thayers again chose to pay other creditors, rather than become current on the outstanding fringe benefit contributions. The Thayers breached their fiduciary duties by using plan assets to pay other creditors. See Yeseta v. Baima, 837 F.2d 380 (9th Cir. 1988) (an employee in charge of plan administration who withdrew plan assets and placed those assets in the company's account to pay necessary operating expenses held personally liable as a fiduciary under ERISA). The Thayers' decision to pay other financial obligations before paying the fringe benefit contributions is a violation of their fiduciary duties to act "solely in the interest of the participants and beneficiaries" of an ERISA plan. 29 U.S.C. § 1104(a)(1).

The Court finds that Timothy and Brian Thayer were fiduciaries with respect to plan assets and that they breached their respective fiduciary duties.

**C. Damages**

When an employer violates Section 515 of ERISA by failing to make contributions to employee funds as required by a CBA, the plan is entitled to recover the contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate equitable relief. 29 U.S.C. § 1132(g)(2). The Funds ask the Court to award all of this relief against Timothy and

Brian Thayer as equitable relief. Pl. Mot. at 7. However, the Funds have not filed a motion seeking attorney's fees and costs at this time. That leaves their request for liquidated damages and interest.

The Thayers argue that ERISA fiduciaries cannot be held individually liable for liquidated damages and interest under 29 U.S.C. § 1132(g)(2). Resp. at 9 (citing Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc., No. 03-71056, 2004 WL 3105944 (E.D. Mich. Sept. 28, 2004)). The Thayers have the better part of this argument.

Whether individuals within a company can be held responsible for damages under 29 U.S.C. § 1132(g)(2) is an open question. See Trustees of Bricklayers & Masons' Local Union No. 5, Ohio Pension Fund v. VIP Restoration, Inc., No. 1:17-CV-01091, 2018 WL 2270949, at *8 (N.D. Ohio Mar. 2, 2018) (finding that a company principal officer liable for unpaid contributions, liquidated damages, and interest if the company is found liable after bankruptcy stay is lifted); see also Glencorp, Inc., 178 F. Supp. 3d at 604 (awarding $13,997.91 in liquidated damages against company and its principal); but see McGuire Steel, 2004 WL 3105944 at *10 (finding company president not subject to § 1332(g)(2), because he was not the employer, and was liable for only the unpaid contributions and interest).

However, the cases in which liquidated damages are awarded against individuals for violation of their ERISA fiduciary duties, the courts do not explain the reasoning behind the liquidated damage awards. The McGuire Steel court, on the other hand, explained that § 1332(g)(2) applies to employers only, which the company president was not. Id. at *6. The Court finds the McGuire Steel court's reasoning persuasive.

The remedies under § 1132(g)(2) flow from delinquent contributions by an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145 (emphasis added). Here, J.C.

Holly, and not the Thayers, is the employer. The Thayers' liability to the Funds is found under 29 U.S.C. § 1109 for losses caused by their breach of a fiduciary duty. There is no question that fiduciaries under § 1109 are personally liable for any losses resulting from a breach of fiduciary duties, such as unpaid fringe benefits and interest. Liquidated damages, on the other hand, "do not serve to make good to the plan any losses and do not constitute appropriate equitable relief . . . ." Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 190 (2d Cir. 2015) (internal marks omitted). Therefore, the Court finds that Timothy and Brian Thayer's liability is limited to unpaid fringe benefit contributions and interest.

The Court finds that the audits reliably show that $36,166.89 of unpaid contributions are owed to the Funds as of August 1, 2018. However, the Court is unable to determine the method used to support an interest award of $15,290.75. See Liquidated Damages and Interest Computations, Ex. 8 to Pl. Mot. (Dkt. 23-8). The interest rate on the unpaid funds appears to have been calculated at either 12% or 18% per annum and there is no explanation as to why either rate should apply. Therefore, the Court will grant in part the Funds' requested relief for unpaid fringe benefit contributions only.

## IV. CONCLUSION

Based on the foregoing, the Court grants in part and denies in part the Funds motion for summary judgment (Dkt. 23) as follows: The motion is granted as to the liability of Timothy Thayer and Brian Thayer in the amount of $36,166.89 in unpaid fringe benefit contributions owing under the audits. The motion is denied without prejudice as to the Funds' claim for interest. The Funds can file a new motion **on or before April 12, 2019** setting forth a calculation of interest

with any supporting documentation. The motion is denied with prejudice as to the Funds' claim for liquidated damages.

SO ORDERED.

Dated: March 29, 2019  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2019.

s/Jennifer McCoy  
Case Manager